IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHIRLEY MORTON BAILEY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:04cv1045 |
| ) | |
| YOUTH VILLAGES, INC., ) | Judge Thomas A. Wiseman, Jr. |
| ) | |
|    Defendant. ) | |

**MEMORANDUM OPINION ON MOTION TO STRIKE**

Before the Court is Defendant Youth Villages, Inc.'s Motion To Strike (Doc. No. 38) portions of three affidavits submitted by Plaintiff Shirley Morton Bailey in support of her opposition to the motion for summary judgment. Ms. Bailey opposes the motion. (Doc. No. 41.) The Court previously addressed a portion of the motion, granting Defendant's request to take the deposition of Teressa McGinnis but denying the motion to depose Qusayy Godbolt or Rosalind Thompson. (See 1/26/2006 Order, Doc. No. 43.) In the same Order, the Court reserved ruling on the motion to strike portions of the affidavits. That portion of Defendant's motion is addressed herein.

For the reasons set forth below, Defendant's motion to strike portions of the subject affidavits will be granted in part and denied in part.

**I.    DEFENDANT'S MOTION TO STRIKE**

Defendant moves to strike certain assertions contained in the affidavits of Qusayy Godbolt (Doc. No.23), Teressa Perkins McGinnis (Doc. No. 24) and Rosalind Thompson (Doc. No. 25). These affidavits were submitted by Plaintiff in support of her opposition to Defendant's motion for summary judgment.

In Wiley v. United States, 20 F.3d 222 (6th Cir. 1994), the Sixth Circuit explained:

> Rule 56(e) requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies of all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

Id. at 225-26 (citing Daily Press, Inc. v. United Press Int'l, 412 F.2d 126, 133 (6th Cir. 1969)). Based upon these considerations, as set forth below, Defendant's motion will be granted in part and denied in part.

### A. McGinnis Affidavit

Plaintiff offers the affidavit of Teressa Perkins McGinnis, who states that she is an African-American woman who was employed at Youth Villages for six months under the supervision of Heather Oulsey, that she was subject to behavior she considered to be racially discriminatory, and she was told twice by Charmaine Kromer that she was not permitted to speak to Ms. Bailey, who was not her supervisor.

Defendant objects on the basis that Ms. McGinnis's testimony is irrelevant because it pertains to an incident involving Heather Oulsey that occurred in 2001, whereas the incidents giving rise to Plaintiff's complaint occurred in 2003 and had nothing to do with Heather Oulsey. The Court agrees with Defendant that vague and unrelated allegations of discrimination made by an individual regarding another employee who had nothing to do with the alleged discrimination against Plaintiff are irrelevant and inadmissible. See Smith v. Leggett Wire Co., 220 F.3d 752, 759–60 (6th Cir. 2000) (finding district court had committed reversible error in admitting evidence of racial statements made by co-workers of African-American employee long before his termination, none of whom was responsible for the decision to terminate). Further, Ms. McGinnis's allegation that she was not permitted to speak with Ms. Bailey about her problem with Ms. Oulsey is of no apparent relevance given that Ms. Bailey was not her supervisor and that the incident is completely unrelated to the incidents of discrimination as alleged by Ms. Bailey. Defendant's motion to strike the affidavit of Teressa McGinnis will therefore be granted.

### B. Godbolt Affidavit

Defendant argues that the Godbolt Affidavit contains hearsay information that is not based on first-hand knowledge and is therefore inadmissible. Defendant objects specifically to paragraphs 9, 10, 11, 12, 13, 15, 16, 18, 19, 21, 22, 23, 25, 28 and 29 of the affidavit.

Paragraphs 9-13 are as follows:

> 9. I was alarmed [about the incident described in ¶ 8], and I went to my supervisor, Ms. Rosalind Thompson, who likewise contacted the Mother, who reiterated that the threats were indeed made to me;
> 10. Ms. Kromer insisted that I go into the home, dismissed the Father's threats and said he was just a "redneck", and posed no risk of harm to the safety of the African-American counselors;
> 11. Ms. Kromer gave a directive for me to go into the home;
> 12. Ms. Bailey and I both disagreed, and expressed our disagreement;
> 13. Based upon Ms. Bailey's years of experience, as well as her personal observations, credible reports from other [sic], and her position as supervisor, Ms. Bailey

supported my decision, and did not force me to physically go to this home[.]

Defendant argues that a portion of paragraph 9 is inadmissible hearsay because there is no indication that Mr. Godbolt was present for the referenced conversation between Ms. Thompson and the "Mother." The Court agrees. In her own Affidavit, Ms. Thompson states simply that she called the home and confirmed what Mr. Godbolt had told her. (Thompson Aff. ¶ 8.) It is apparent from the face of these two affidavits together that Mr. Godbolt was not a party to the telephone conversation between Ms. Thompson and "Mother." The underlying "truth of the matter asserted" for purposes of the hearsay rule, Fed. R. Evid. 801(c), as it applies to the statement in paragraph 9, is that Ms. Thompson reported to Mr. Godbolt that she had called the home and confirmed his allegations in regards to the threat.[1] Because Mr. Godbolt apparently was not present for the call, his statement that Ms. Thompson made the call and confirmed his report is hearsay (or double hearsay) regarding which he is not qualified to testify (although Ms. Thompson obviously is).

With respect to paragraphs 10 and 11, Defendant argues that there is no indication that Ms. Kromer made the alleged statements directly to Mr. Godbolt or that Mr. Godbolt heard the alleged statements. Further, Ms. Kromer has filed her own affidavit in which she denies that any such conversation occurred between her and Mr. Godbolt (or anyone else). (Doc. No. 50, 1/6/2006 Affidavit of Charmaine Kromer ("Kromer Aff."), ¶¶ 2, 3.) Notwithstanding, Paragraph 1 of Mr. Godbolt's Affidavit states that he has "personal knowledge of the facts stated in this Affidavit." (Doc. No. 23, ¶ 1.) Unlike paragraph 9, which by its context indicates hearsay, paragraphs 10 and 11 imply that Ms. Kromer made the alleged statements directly to Mr. Godbolt. The fact that Ms. Kromer denies making such statements simply creates a disputed issue of fact, not a basis for disregarding the testimony of Mr. Godbolt. A statement by Ms. Kromer is, at least arguably, an agent of the Defendant authorized to speak on the topic, which is not hearsay under Fed. R. Evid. 801(d)(2). Paragraphs 10 and 11 are therefore admissible, at least at this stage in the proceedings.[2]

As for paragraph 12, Defendant argues again that there is no indication that Mr. Godbolt had first-hand

---

[1] Mr. Godbolt's report of the threat itself would not be hearsay, as a threat would fall under the state-of-mind exception provided by Fed. R. Evid. 803(3).

[2] At trial, Defendant would be permitted to cross-examine Mr. Godbolt on this question and may in fact determine that the testimony in his affidavit is misleading to the extent it indicates Ms. Kromer made these statements in his presence.

3

knowledge of Ms. Bailey's disagreement. To the contrary, again, paragraph 1 of the affidavit states that Mr. Godbolt has personal knowledge, and a statement that Ms. Bailey and Mr. Godbolt both disagreed and expressed their disagreement can only be reasonably understood to mean that Ms. Bailey expressed her disagreement to Mr. Godbolt or in his presence. Assuming that to be the case, such statement would not be excluded as hearsay since it falls under Fed. R. Evid. 803(3) (providing that "[a] statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" is not excluded by the hearsay rule).

Paragraph 13, except for Mr. Godbolt's statement that Ms. Bailey did not "force" him to go to the home of the man who threatened him, consists of conclusory allegations without foundation that are inadmissible. The relevance of that portion of the statement is also questionable.

Paragraph 15 states that "Ms. Bailey was the supervisor that oversaw the therapeutic process, and supervised the weekly meetings." Defendant objects to this statement on the basis that Ms. Bailey's deposition testimony establishes that she was not Mr. Godbolt's supervisor. Paragraph 15 does not state, however, that Ms. Bailey was Mr. Godbolt's direct supervisor, and there is no dispute that her title was "Clinical Program Supervisor."

Paragraph 16 states: "Prior to this incident, Ms. Bailey was allowed to speak to the staff, including me, to perform her job as the Senior Clinical Supervisor or Consultant." Defendant's objection, that Mr. Godbolt could not have personal knowledge of what Ms. Bailey was or was not allowed to do since he was not her supervisor, is well taken. The only way Mr. Godbolt could have "personal knowledge" of this "fact" would be through hearsay from Ms. Bailey or someone else.

Paragraph 18 states, "Ms. Kromer became upset with me, as told to me by my supervisor," is by its terms hearsay and not based upon personal knowledge.

Paragraph 19 states: "I refused to go to the home, and Kromer threatened to move me to a different job, which was a 24 hour position, as well as continue my job at the time as a senior family counselor, which was impossible." Defendant objects to this statement on the basis that Ms. Kromer denies making any such threats and Mr. Godbolt does not indicate whether Ms. Kromer made the alleged statements directly to him or whether he heard about them through a third party. For purposes of the motion for summary judgment at

4

least, the Court interprets this sentence as an allegation that Ms. Kromer made these threats directly to Mr. Godbolt.[3] The fact that Ms. Kromer denies making the statements creates a disputed issue of fact rather than a basis for excluding Mr. Godbolt's testimony.

Mr. Godbolt's statements in paragraphs 21, 22 and 29 indicate that he voluntarily resigned his position at Youth Villages shortly after this incident because he felt that he had been subject to racism and racial discrimination in the past and that he had been passed over for a promotion that was offered instead to a white employee who did not even want the promotion. While Mr. Godbolt obviously is competent to testify that he resigned from Youth Villages, the Court finds Defendant's objections to his statements regarding why he resigned to be well taken. Mr. Godbolt's perception of racism is conclusory and irrelevant to Ms. Bailey's claims. His allegation of being passed over for a promotion is likewise vague and conclusory, besides being irrelevant.

Similarly, Mr. Godbolt's statement in paragraph 23 that Ms. Bailey was an excellent supervisor who always gave him excellent advice is immaterial; his statement in paragraph 24 that she could not do her job without being permitted to speak to the staff completely lacks foundation since Mr. Godbolt has no personal knowledge regarding Ms. Bailey's job specifications or whether Ms. Bailey was forbidden to speak with staff.

In paragraph 25, Mr. Godbolt states that the management at Youth Villages was "overwhelmingly white," unlike the racial demographics of the Clarksville Montgomery County area. While Mr. Godbolt is qualified to testify that the management at Youth Villages was predominantly white, he offers no foundation for his statistical analysis of the racial demographics of the Clarksville-Montgomery County area, so that portion of his statement is inadmissible.

Paragraph 28 states: "The individual who replaced Ms. Bailey was white, and I personally know she could speak to the staff freely, unlike Ms. Bailey." Defendant does not object to the allegation that Ms. Bailey's replacement was white but protests, with justification, that Mr. Godbolt had no way of "personally know[ing]" what said replacement (or Ms. Bailey) was or was not permitted to do by her supervisors. That portion of the statement is inadmissible

---

[3]As also stated in Note 2, above, Defendant would be permitted to cross-examine Mr. Godbolt on this question at trial, and may determine that the testimony in his affidavit is misleading to the extent it indicates Ms. Kromer made these statements in his presence.

5

In sum, Defendant's motion to strike Mr. Godbolt's Affidavit will be granted as to paragraphs 9 (in part), 13 (in part), 16, 18, 21 (in part), 22, 23, 24, 25 (in part), 28 (in part), and 29 (in part), and denied as to paragraphs 10, 11, 12, 15, and 19 of the affidavit.

### C. Thompson Affidavit

Defendant objects to certain portions of the Affidavit submitted by Rosalind Thompson, Qusayy Godbolt's former supervisor, including paragraphs 6, 10, 11, 12, 15, 16, 19, 20, 22, and 25. Each of these is addressed individually below.

Paragraph 6 states that Ms. Bailey was Ms. Thompson's consultant while Ms. Thompson was employed at Youth Villages, and Ms. Thompson worked under Ms. Bailey's supervision. Defendant objects to this statement on the grounds that Plaintiff herself has admitted she was not Ms. Thompson's supervisor. As set forth above, however, there is no question that Ms. Bailey's title was that of "Clinical Program Supervisor/Consultant," and that she consulted with Ms. Thompson in that capacity. The question of whether Ms. Bailey was Ms. Thompson's direct supervisor is largely academic, and there may well have been confusion in the ranks as to the exact extent of Ms. Bailey's authority. The motion to strike this paragraph will therefore be denied.

Paragraph 10 states, "Kimberly Ellis, from Youth Villages, wanted me to go to this home. I did not based upon safety concerns." Defendant objects to this statement on the grounds that Ms. Ellis was not actually Ms. Thompson's supervisor at the time, offering as proof Charmaine Kromer's statement in her affidavit to that effect. The question of Kimberly Ellis's role at Youth Villages and whether she had supervisory authority over Ms. Thompson (or whether Ms. Thompson perceived her to have such authority) are fact questions that are not resolved by Ms. Kromer's testimony contradicting that of Ms. Thompson.

Defendant objects to paragraph 11 on the same grounds, but it is not apparent how this objection pertains to paragraph 11 at all, which states: "Ms. Bailey agreed with Mr. Godbolt and [me] and supported our decision not to go to this home based upon our safety concerns." Defendant may have intended to state that *Ms. Bailey* was not Ms. Thompson's supervisor at the time, but such objection is beside the point.

Paragraph 12 states: "Shortly thereafter, I was directed not to communicate with Ms. Bailey from Charmaine Kromer and Kimberly Ellis." Defendant objects to this statement on the grounds that it is

6

incomplete. According to Defendant, Ms. Thompson was not told that she could not consult with Plaintiff. Rather, she was told that she should consult with Plaintiff about safety concerns only in the presence of Ms. Thompson's supervisor, since Plaintiff was not Ms. Thompson's supervisor. Again, however, Ms. Kromer's affidavit testimony, which supports Defendant's contention, only serves to create an issue of fact as to what was said to Ms. Thompson about consulting with Plaintiff.

> Paragraphs 15, 16, 19, and 20 state:
> 15. I believe that the African American employees of Youth Villages were treated differently and less favorably [than] the white employees doing the same jobs;
> 16. For example, I was not allowed to take leave when my niece had brain surgery and she was living with me, whereas Ms. Jackson, a white employee was allowed to take extensive leave to care for her family member residing with her;
> . . . .
> 19. As a second example of what I believed to be racism, when Heather Oulsey, a white employee, was not comfortable going into a home, she was taken off the case, and it was reassigned, where as Qusayy Godbolt was ordered to take the Robertson County case and go into a home;
> 20. On numerous occasions I saw cases reassigned when white counselors were not comfortable going into a home, which was not true for African-Americans[.]

Defendant objects to paragraph 15 on the grounds that it is conclusory and to paragraph 16 on the grounds that it is both conclusory and irrelevant, since the lawsuit does not involve any claim by Plaintiff that she asked for and was denied leave. The Court agrees.

Defendant also objects that paragraphs 19 and 20 do not contain "specific information about employees who were similarly situated to Plaintiff and does not cite any specific facts with regard to the two situations at issue. Thus, Ms. Thompson's assertions of racism are conclusory and inadmissible." Again, the Court finds Defendant's objections to be meritorious.

In paragraph 22, Ms. Thompson alleges that she made charges of racial discrimination internally within the company, and Barbara Grunow sent her a letter indicating that if she continued to make such complaints, she could face disciplinary action. Although Fed. R. Civ. P. 56(e) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith," the letter to which Ms. Thompson refers was not attached to her affidavit. Defendant, in support of its objection to this statement, has filed the affidavit of Charmaine Kromer, to which is attached a copy of the referenced letter from Barbara Grunow to Ms. Thompson, which Ms. Kromer certifies is a record of regularly conducted business activity maintained by Youth Villages. That letter does not contain any threat of

7

disciplinary action.  Defendant's motion to strike paragraph 22 will therefore be granted.

Paragraph 25 states:  "I am and was familiar with the racial demographics of the Clarksville, Montgomery County area and the percentage of African-American[s] in the community did not correlate to the percentage of African-American supervisors at Youth Villages."  Besides the fact that this statement does not indicate whether the percentage of African-American supervisors at Youth Villages is greater or less than the percentage of African-Americans in the community, Defendant is correct that this statement lacks adequate foundation and is inadmissible.

To summarize, Defendant's motion to strike paragraphs 15, 16, 19, 20, 22, and 25 of Rosalind Thompson's Affidavit will be granted.  The motion is denied insofar as it is directed toward paragraphs 6, 10, 11, and 12.

## II. CONCLUSION

As set forth above, Defendant's motion to Strike the affidavit of Teressa McGinnis will be granted. The Motion to strike the affidavit of Qusayy Godbolt will be granted as to paragraphs 9 (in part), 13 (in part), 16, 18, 21 (in part), 22, 23, 24, 25 (in part), 28 (in part), and 29 (in part), and denied as to paragraphs 10, 11, 12, 15, and 19 of that affidavit.  Defendant's motion to strike paragraphs 15, 16, 19, 20, 22, and 25 of Rosalind Thompson's Affidavit will be granted.  The motion will be denied insofar as it is directed toward paragraphs 6, 10, 11, and 12.

An Order consistent with the findings set forth herein will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge